# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GERARDO OLIVERAS ZAPATA | CIVIL NO. CIVIL NO. 09-1987 |
| PLAINTIFF | RE:   AGE DISCRIMINATION ACT (ADEA); TITLE VII OF THE CIVILS RIGHTS ACT OF 1964 (42 U.S.C. 2000e ET SEQ.; THE CIVIL RIGHTS ACT OF 1991;  PR LAW NO. 100 OF JUNE 30, 1959; PUERTO RICO LAW NO. 69 OF JULY 6, 1985; PUERTO RICO LAW NO. 115 DECEMBER 20, 1991; AND WRONGUL DISCHARGE UNDER P.R. LAW 80 OF MAY 30, 1976 |
| VS. | |
| UNIVISION PUERTO RICO, INC. | |
| DEFENDANT | TRIAL BY JURY |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**TO THE HONORABLE MAGISTRATE JUDGE BRUCE J. MCGIVERIN:**

**NOW COMES** the Plaintiff, through the undersigned attorneys, and submits his response in opposition to Defendant's motion for summary judgment.

## I.      INTRODUCTION

Defendant's motion for summary judgment and its statement of uncontested facts are frivolous per se. Indeed, some of Defendant's exhibits establish the existence of genuine issues of facts that preclude the entry of summary judgment. For instance, Defendant included as its exhibits direct evidence of retaliation and pretext. This evidence was presented by Defendant itself and cannot be subjected to any attack regarding its veracity and admissibility for purposes of opposing summary judgment. Worst, Defendant mischaracterizes the evidence and tries to mislead the Court by presenting, as uncontested, facts that are not supported by the evidence or that are contested. In this context, to suggest that Defendant's statements of "facts" are uncontested denotes lack of candor, to say the least.

## II.    SUMMARY JUDGMENT STANDARD

It is well settled law that the entry of summary judgment is appropriate only if the full record discloses no *genuine* issues over *material* facts and the moving party is entitled to judgment as a matter of law.  *See e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242(1986). In the context of employment discrimination, the entry of summary judgment "for the defendants is appropriate when the evidence is so one-sided that no reasonable person could find in favor of the Plaintiff*." Kearney v. Town of Wareham,* 316 F.3d 18, 22 (1st Cir.2002). Furthermore, the ironclad rule at the summary judgment stage is that the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-151 (2000); *Crawford v. Metropolitan Gov't of Nashville and Davidson County,*129 S.Ct. 846, 849 n.1 (2009); *Hunt v. Cromartie, 526 U.S. 541, 550-555 (1999)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Mariani-Colon v. Dep't of Homeland Sec. ex. rel. Chertoff,* 511 F.3d 216, 221 (1st Cir.2007)*Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir 2000);  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.1990); Mellen v. Trs. of Boston Univ., 504 F.3d 21, 24 (1st Cir.2007).* Reasonable inferences need not to be necessarily more probable or likely than other inferences that might tilt in the moving party's favor. "If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Patterson & Wilder Constr. Co. v. United States,* 226 F.3d 1269, 1274 (11th Cir.2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions". *Hunt v. Cromartie, 526 U.S. 541, 552 (1999).*

## III.    DISCUSSION

**A.      Plaintiff's claims under ADEA and Title VII are not time barred**

Defendant contends that Plaintiff's claims of sex and age discrimination are time barred. This is incorrect. First, it is an uncontested fact that Plaintiff was not deprived of his duties in one step as Defendant submits. To the contrary, it was a continuing process. When Luani Pellot became Assistant Director of the Department of Promotions she worked Oliveras in the assignment and distribution of the workload to the editors. (**See Plaintiff's Exhibit 1 ¶ 19**). At the beginning the responsibility of assigning and distributing the workload to the producers was a shared responsibility between Oliveras and Pellot, but around September 2007, Rodríguez began to take this responsibility away from Oliveras and to give it to Luani Pellot.  Also Rodríguez started bypassing Oliveras and dealing directly with Luani Pellot in all matters related to the Promotions Department. (**See Plaintiff's Exhibit 1 ¶ 20**). Rodríguez discrimination campaign was a continuous violation campaign in which she progressively stripped Oliveras of his functions and assigned them to Luani Pellot. As part of this continuous discrimination campaign, Rodríguez bypassed Oliveras in the chain of command by communicating the instructions and tasks directly to Luani Pellot or to the other personnel under his supervision, and totally bypassing him. (**See Plaintiff's Exhibit 1 ¶ 31 and  Defendant's Exhibits C-24**).

Indeed, Oliveras clearly stated that the deprivation of his duties was not a one shot deal, but a constant process that altered the terms and conditions of his employment at Univision. (**See Defendant's Exhibit J).** This is the reason why in his sworn statement filed before the ADU and the EEOC Oliveras stated that this was a continuing violation claim. (**See Defendant's Exhibit J in which Oliveras filled the blank of continuous violation box**).  In this context, "the continuing **violation doctrine** is an **equitable** exception to the requirement that an administrative claim be filed within 300 days of the discriminatory act." *Cardona v. Aramark Services of Puerto Rico, Inc.,* 9 F.Supp.2d 92, 98 (D.P.R.1998) ( *citing Provencher v. CVS Pharmacy,* 145 F.3d 5, 14 (1st Cir.1998); *Lawton v. State Mut. Life Assur.*

*Co. of America,* 101 F.3d 218, 221-22 (1st Cir.1996)). "The purpose of the continuing violation doctrine is to permit the inclusion of acts whose discriminatory character was not apparent at the time they occurred and to protect a plaintiff who is 'unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.' " *Acevedo Martínez v. Coatings Inc. and Co.,* 251 F.Supp.2d 1058, 1064-65 (D.P.R.2003) ( *citing Provencher,* 145 F.3d at 15; *Speer v. Rand McNally & Co.,* 123 F.3d 658, 662 (7th Cir.1997). Thus, for the continuing violation doctrine to apply, Oliveras only needs "to establish that a discriminatory "anchoring act" occurred within the limitations period." *Noviello v. City of Boston,* 398 F.3d 76, 86 (1st Cir.2005). To qualify as an anchoring act, the discriminatory act must "substantially relate[ ] to [the] earlier incidents of abuse." *Lockridge v. The University Of Maine System,* 597 F.3d 464, 474 (1st Cir. 2010). The facts clearly establish that there were several anchoring acts since September 2007, because the deprivation of Oliveras duties started progressively, not by one act, from that moment on. Defendant had the opportunity to inquire into Oliveras' ADU and EEOC charge to explore in a more detailed manner why he was claiming that his claims of sex and age discrimination was a continuing act. For unknown reasons it refrained to do so during his deposition and now this is a matter that should be decided by the trier of fact. In light of the foregoing, the reasonable inference at the summary judgment stage is that Oliveras was deprived of his duties no in just one act, but in a series of events, which precludes the conclusion that his claims of age and sex discrimination are time barred.

In the alternative, Oliveras submits that his claims of sex and age discrimination are not time barred by the operation of the equitable doctrine of estoppel. See, *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Although applied sparingly, the estoppel doctrine "is appropriate when an employee is aware of his **Title VII** rights but does not make a timely filing due to [his] reasonable reliance on [her] employer's misleading or confusing representations or

conduct." *Vera v. McHugh 622 F.3d 17, 30 (1st Cir. 2010)*. This doctrine demands that Oliveras establishes "[e]vidence of either the employer's improper purpose or his constructive knowledge of the deceptive nature of his conduct." *Id.* That evidence must be in the form of some "definite, unequivocal behavior ... fairly calculated to mask the truth or to lull an unsuspecting person into a false sense of security." *Vera v. McHugh 622 F.3d 17, 30 (1st Cir. 2010)*. The facts clearly establish the applicability of the equitable doctrine of estoppel in the instant case. First, Oliveras received a payment raised of $5000.00 three months before of Pellot promotions. (**See Plaintiff's Exhibit 1 ¶ 9 and 17**).  Second, Sands praised Oliveras worked during the years 2006, 2007 and up to March 31, 2008. (**See Plaintiff's Exhibit 1 ¶ 8**).  Third, at the time Pellot was promoted Sands told Oliveras that he was promoting Luani Pellot so that she could take over some of his responsibilities so as to allow Oliveras to dedicate time to more important things. (**See Plaintiff's Exhibit 1 ¶ 16**). Finally, in January 2008, Sands and Rodríguez informed Oiveras that they were recommending him for a position with the network in Miami, FL because of his knowledge, experience and leadership. (**See Plaintiff's Exhibit 1 ¶ 28**). From the stand point of a rational person and the applicable law these facts denotes a "definite, unequivocal behavior ... fairly calculated to mask the truth or to lull an unsuspecting person into a false sense of security." *Vera v. McHugh 622 F.3d 17, 30 (1st Cir. 2010)*. Therefore, the uncontested facts and the reasonable inferences of the instant case make the equitable doctrine of estoppel applicable in the instant case.

### B.     Univision discriminated against Oliveras because of his age and gender

Defendant contends that Oliveras cannot prove that he was performing his job to Defendant's expectations. However, the facts not only establish that Oliveras was performing his duties in a satisfactory manner, but that Defendant has been mendacious on this point. Defendant's line of attack is clearly preposterous. Is based on its post hoc theory that Oliveras was not performing his duties since January 2005. In this endeavor Defendant has fell on his own sword.

1.     **Plaintiff's uncontested facts that establishes Defendant's mendacity as to the Oliveras' poor performance and that reasons for his termination are pretext to masquerade sex and age discrimination and retaliation**

This is Plaintiff's side of the story which, for purposes of summary judgment, must be taken as true by this Honorable Court.  *See e.g., Anderson, supra*. These are facts which, if uncontested, do not favor defendant's position.  If contested, they preclude the entry of summary judgment in favor of defendant.

As Oliveras stated in his statement under penalty of perjury that Larry Sands lies when he said that he was not satisfied with Oliveras' performance as Director of the Promotions Department regarding the launch of the novela "Alborada" in January 2005 and that, Oliveras had a misguided strategy and lack of attention to details that affected the station ratings of 2005.  **(See  Plaintiff's Exhibit 1 ¶7)**  Oliveras trajectory contradicted Larry Sands' lies, because on April 16, 2005, he received the Univision Television Group Promo Award, which was recognition of the commitment to excellence that Oliveras' department and him made every day. **(See  Plaintiff's Exhibit 1 ¶7)**  Oliveras also received the award from John Lippman, Vice President of New and Operations of Univision Television Group, Inc, in a ceremony in Las Vegas, Nevada. **(See Plaintiff's Exhibit 1-B**).  Indeed, during the award ceremony, Larry Sands gave Oliveras the Golden Tulip Broach, in recognition of his performance as Director of the Promotions Department of Univision and he congratulated Oliveras for his performance at that ceremony.  **(See  Plaintiff's Exhibit 1 ¶7)**  Furthermore, neither Larry Sands nor Jessica Rodríguez told Oliveras that he was not performing his duties and responsibilities or that he had a misguided strategy or that he was dropping the balls in connection with the novela "Alborada" or any other program, novelas, promos, station identification blocks or programming logs, of Univision, during the years 2005, 2006 and 2007, up to March 31, 2008. **(See  Plaintiff's Exhibit 1 ¶7)**  Likewise, there is no written warning from them criticizing Oliveras performance up March 31, 2008. **(See  Plaintiff's**

**Exhibit 1 ¶7)**  The first time that Oliveras learned that about these comments about his performance as Director of the Promotions Department of Univision was through Larry Sands' Statement Under Penalty of Perjury, signed on December 17, 2010. **(See Plaintiff's Exhibit 1 ¶ 7, See also Plaintiff's Exhibit 2, p. 67, L. 3-16 - Deposition of Jeannette Reyes, Univisión Human Resources Manager, in which she admitted that before March 31, 2008 there was no written warning from Sands and Rodríguez criticizing Oliveras performance.).**

Defendant's contention that Olivera's poor performance is corroborated by multiple e-mails sent by Sands and Rodríguez is at war with Reyes's testimony deposition.   Reyes admitted that when an employee has a poor performance problem and he is going to be disciplined, she is consulted. (**Plaintiff's  Exhibit 2,  P. 19, L. 20-24 and P. 20, L. 1-6**). She also admitted that a written warnings and memos must be included in the employee's personal file.  (**See:  Plaintiff's  Exhibit 2, P. 67, L. 4-8**). But contrary to Sands and Rodríguez, Reyes admitted that the only warnings and memos in Oliveras' personnel file were written after March 31, 2008. (**See:  Plaintiff's  Exhibit 2, P. 67, L. 12-16; P. 80, L. 18-23; P. 92, L. 19-24; P. 93, L. 1).** Likewise**,** Reyes admitted that there is no warnings or memos in Oliveras personnel file that were written before March 31, 2008, that stated that he did not know his duties as the Director of Univision's Promotions Department.  (**See:  Plaintiff's Exhibit 2, P.93,  L. 7-11**). Reyes also admitted that there were no complaints from Oliveras' subordinates regarding his leadership and performance before she carried out her interview of Pellot, Pagán and Colón.  (**See: Plaintiff's Exhibit 2, P. 95, L. 4-23**).

Worst, Larry Sands never told Oliveras during the year 2006 and up to March 31, 2008, that he was not performing according to his expectations**.  To the contrary during the years 2006, 2007 and up to March 31, 2008, Larry Sands praised Oliveras' work**. **(See Plaintiff's Exhibit 1 ¶ 8).** It is because Olivera had an excellent performance that he received salary increases of $5,000.00 in May

2005 and May 2006, because as per his employment contract, Univision could terminate him with cause and without notice if he was not performing.  **(See Plaintiff's Exhibit 1 ¶ 9 and Exhibit 1-A, P. 5, ¶2 (a)(3).**  In this context, it is implausible, irrational and pretextual, that Univision, being the largest Spanish speaking broadcasting company in the United States, could retain an alleged incompetent Promotions Director, and at the same time reward him with a $5,000.00 pay raise for two consecutive years.  Worst, it is more than irrational, that these alleged dismal performance problems were not included in his personnel file even though, Univision is one of the largest broadcasting companies in the United States, with it is Legal Division in the State of California and the operations department in Miami, Florida, and Human Resources Director Reyes has a Masters' Degree in Labor Relations and over ten years experience in Human Resources.  (**See  Plaintiff's Exhibit 2, P. 12, L.10-22**)

Defendant did not mention, and this a fundamental flaw in its strategy, that Oliveras alleged dismal performance is contradicted by the Vice-President of News and Operations, Mr. John Lippman, whose April 16, 2005 letter congratulates Oliveras for winning Univision's Television Group Promo Award. **(See Plaintiff's Exhibit 1 ¶ 7 and Exhibit 1-B**). This letter is direct contradiction to Sands' statement that Oliveras was having serious performance problems since January 2005. By the same token, John Lippman sent Oliveras an e-mail on August 23, 2006 praising him for the hurricane promo **(See Plaintiff's Exhibit 1 ¶ 10 and Exhibit 1-C**)  Oliveras' work was also recognized by Otto Padrón through the e-mail that Oliveras received from Padrón on February 12, 2008.  (**See Plaintiff's Exhibit 1 ¶ 11 and Exhibit 1-D**).  Mr. Padrón is the Vice-President of Programming and Promotions.  Larry Sands knew that Padrón praised Oliveras work because the praised happened in front of him and Larry Sands. **(See Plaintiff's Exhibit 1 ¶ 11).** On March 18, 2008, Larry Sands sent an e-mail to Terry Macking and Ray Rodríguez, regarding the station rankings, in which Larry Sands told them that the ratings had just came out and Univision Puerto Rico had 20 of the top 25 programs with w1849 (women

18 to 49 years old) and a1849 (adults 18 to 49 years old).  On March 18, 2008, Ray Rodríguez sent Larry Sands a returned e-mail regarding the ranking in which he congratulated Larry Sands and told him to pass on their congratulations for a job well done to his team.  On March 19, 2008, Larry Sands sent the Ray Rodríguez e-mail to the San Juan – Department Heads, with the message:  See below.  As a Department Head in Univision, Oliveras this chain of emails regarding the ranking, with the station having 20 of the top 25 programs with w1849 and a1849.  (**See Plaintiff's Exhibit 1 ¶ 12 and Exhibit 1-E**). Oliveras' work was also recognized by Jackie Dau, Vice President Client Services Director, Young & Rubicam Advertising Agency, through the e-mail from Thursday, March 27, 2008, which she sent to Larry Sands, Jessica Rodríguez and him. (**See Plaintiff's Exhibit 1 ¶ 13 and Exhibit 1-F).** Oliveras' work was also recognized by Ms. Karilyn Bonilla Colón, Executive Director of the "Estado Libre Asociado de Puerto Rico Agencia Estatal Para el Manejo de Emergencia y Administración de Desastres", through her letter of April 1, 2008, for the activity "Visita Del Avión Cazahuracanes."  (**See Plaintiff's Exhibit 1 ¶ 14 and Exhibit 1-G**)

Furthermore, Larry Sands told Oliveras that he was promoting Luani Pellot so that she could take over some of his responsibilities so as to allow Oliveras to dedicate time to more important things. **(See Plaintiff's Exhibit 1¶ 16 and 55)**  Neither Larry Sands nor Jessica Rodríguez told Oliveras that Luani Pellot was being promoted because he was not performing his duties and responsibilities, or that Oliveras was dropping too many balls or making promotional errors and mistakes or that he had a misguided strategy in any manner whatsoever.  The first time that Oliveras learned that Luani Pellot was promoted to Assistant Director of the Promotions Department because allegedly he was not performing his duties and responsibilities, or that he was dropping too many balls or making promotional errors and mistakes or that he had a misguided strategy, was through Larry Sands' Statement Under Penalty of Perjury, signed on December 17, 2010. (**See Plaintiff's Exhibit 1 ¶ 16**).

Defendant's position that it promoted Pellot because Oliveras was not performing the duties and responsibilities of his position **"is a riddle wrapped in a mystery inside an enigma."**[1] It would have been an irrational and illogical decision, to say the least, for Univision to assign Oliveras an Assistant Director of Promotions Department, if his performance was not in accordance with Univision's expectations, when it would have been easier for Univision to exercise their option under Oliveras' employment contract and terminate him for cause.  On the contrary, Oliveras was rewarded with a salary increase of $5,000.00 due to his performance some three months before Luani Pellot was promoted to Assistant Director of the Promotions Department. (**See Plaintiff's Exhibit 1 ¶ 17**).

Likewise**,** Larry Sands never told Oliveras that he was not going to renew his employment contract due to his performance or lack of leadership.  What Sands told Oliveras in May 2007 was that his contract was not yet renewed because he and Rodriguez were not in agreement about my performance. Larry Sands also said that when my employment contract was renewed it would be retroactive. (**See Plaintiff's Exhibit 1 ¶ 21**). But this is also another instance of mendacity, because Reyes admitted that Unvision has department heads like Oliveras was, working without an employment contract probably since 2008.  (**Plaintiff's  Exhibit 2,  P. 117, L. 18-19**).

Worst yet, in January 2008, Sands and Rodríguez informed Oiveras that they were recommending him for a position with the network in Miami, FL because of his knowledge, experience and leadership. (**See Plaintiff's Exhibit 1 ¶ 28**). This militates to the Defendant's contention that Oliveras had a poor performance. The reasonable inference is to the contrary. In January 2008 Sands and Rodríguez considered that Oliveras exceeds the expectation of his position and considered him a good candidate for a promotion.  Likewise, none of the e-mails sent by Defendant during the years 2006 and 2007 mentioned the word poor performance or that they were a warning or reprimand as to Oliveras'

---

[1] This is a phrase said by Winston Churchill regarding Russia.

performance or that his performance was adversely affecting Univision. These are clearly are post hoc justifications and evidence of pretext. Indeed, Oliveras denied all of them and clearly stated that he was never disciplined for any of them. **(See among other, Plaintiff's Exhibit 1 ¶ 7, 17 and 21;  See also Plaintiff's Exhibit 2, p. 67, L. 3-16 - Deposition of Jeannette Reyes, Univisión Human Resources Manager, in which she admitted that before March 31, 2008 there was no written warning from Sands and Rodríguez criticizing Oliveras performance.).**

With regards to the AAV coverage during Thursday, March 27, 2008 and Friday, March 28, 2008, Oliveras worked the full shift at the station, leaving the station between 5:15 and 5:30 p.m. on both days.  The reason Oliveras left at that time was because he had to pick up my two nephews, ages 2 and 4 years old, from day care, and Larry Sands and Rodríguez knew this beforehand. Larry Sands and Rodríguez knew that Oliveras was at the station on both days working with the programming logs for both days, and for Saturday, March, 29, 2008; Sunday, March 30, 2008; Monday, March 31, 2008 and Tuesday, April 1, 2008 and they were in contact with him. The hectic pace of the AAV coverage forced Oliveras to make constant and continuous changes to the programming logs. Indeeed, on March 27, 2008, the first person Oliveras saw when he arrived at the station was Larry Sands, and Oliveras told him about a great idea he had for a POP, which was produced later on that day. Larry Sands and Rodríguez were in contact with Oliveras and they never requested his physical presence or his feedback at the News Department or Master Control.  Both Larry Sands and Rodríguez knew that Oliveras had to dedicate his complete attention to the programming logs, which are a vital component of the station's operations.  The practice of Larry Sands and Rodríguez was that if Oliveras presence was needed at the News Floor or Master Control, they would have called Oiveras, sent him an e-mail or text message for him to report there. Larry Sands and Rodríguez did not call or send me an e-mail or text message telling Oliveras that his presence was needed at the News Floor or Master Control, and for Oliveras to report

there on Thursday, March 27, 2008 and Friday, March 28, 2008. (**See Plaintiff's Exhibit 1 ¶ 24**) In sum, the aforementioned clearly contradicts Defendant's assertion of poor performance as to the AVV incident and it is evidence of mendacity or at the very least an issue of material fact that should be decided by the jury but not as a matter of law.

It should be mentioned that Oliveras was totally surprised and dismayed of being accused at all those lies and fabrications in the March 31, 2008 meeting.  Especially, since six weeks earlier Larry Sands and Rodríguez told him  that he was being recommended for a position in the network because of his experience, knowledge and leadership.  (**See Plaintiff's Exhibit 1 ¶ 28**). As a result of that meeting, Oliveras attorney sent an letter on March 31, 2008 indicating Oliveras will file a complaint for age and sex discrimination against Defendant and Rodríguez.  On April 1, 2008, after Oliveras attorney had sent the March 31, 2008 letter via fax to Jessica Rodríguez, her assistant, Karen Padín, asked Oliveras, if he was going to file a complaint against the company.  (**See Plaintiff's Exhibit 1 ¶ 29**).

Olivera's opposition to Defendant's unlawful practices caused an implosion within Univision. First, on April 4, 2008, in a meeting in Sands office, where Reyes was present, Sands got really mad because Oliveras told him that he had legal representation.  In an agitated manner and banging on the desk, Sands told Oliveras that he did not need a lawyer for anything.  (**See Plaintiff's Exhibit 1 ¶ 52**)**.** From that moment on, Larry Sands only talked to Oliveras at the staff meetings and stopped being friendly to him as he used to be.  (**See Plaintiff's Exhibit 1 ¶ 53**)**.** Furthermore**,** on April 4, 2008, Oliveras sent Larry Sands, with a copy to Rodríguez and Jeannette Reyes, an e-mail with two attachments.  In the first attachment he reaffirmed his intention to file a claim against Univision, Jessica Rodríguez and Larry Sands before the Federal Court in Puerto Rico because of age and sex discrimination.  The second attachment was the letter that his attorney had sent to Jessica Rodríguez via fax on March 31, 2008. (**See Plaintiff's Exhibit 1 ¶ 30 and Exhibit 1-H**)**.** Second, Reyes received the

letter of Oliveras' attorney and admitted that the letter was sent to the Legal Division and that she then received instructions from the Legal Division in mid-April to allegedly start to investigate Oliveras' claims of age and sexual discrimination.  **(See:  (See:  Defendant's Exhibit F, P. 57, L. 15-24; P. 58, L. 1-18).**

However, on April 10, 2008, Attorney Ayra Towfighi, Unvision's Vice President and Senior Legal Counsel, sent a letter to Oliveras' attorney where he said that "**if Mr. Oliveras wishes to withdraw his baseless threat of litigation and simply discuss his departure from the company in a more amicable fashion, I am certainly open to do doing so**."  **(See:  Exhibit 3, P. 3 ¶2).** In other words, Univision's Senior Legal counsel concluded without making the investigation that Olivera's claims were baseless and that he should withdraw his threat of ligation and depart from the company in a more amicable way. This is direct evidence of retaliation. Worst, Attorney Towfighi's direct threat to terminate Oliveras' employment because he opposed defendant's unlawful actions under Title VII and ADEA, was reinforced by Jessica Rodríguez' April 17, 2008 (9:39 p.m.) e-mail, in which, Rodríguez stated:  "**As it was explained to your attorney, your attempts to "save" your job by making false accusations of discrimination will not have the desired effect.  … If, however, you have no desire to remain employed by Univision, you should continue down this path of not accepting any responsibility for your actions (or lack of action)**). … Nevertheless, I am forwarding your e-mail to Jeannette Reyes in Human Resources so she can investigate your accusations."  (**See Plaintiff's Exhibit 1 ¶ 32 and Defendant's Exhibit C-25**).

It is clear from the letter from Attorney Towfighi and the letter from Rodríguez, who was the person discriminating against Oliveras, that Defendant concluded without any investigation that Oliveras' claims were baseless and that nothing could save him from being discharged. Oliveras had committed the capital sin of opposing Defendant's unlawful practices. This direct evidence of retaliation

dispels any doubt, for several reasons, that Oliveras' fate had been already decided in April 20088 and not in August 22, 2008. First, Attorney Towfighi's letter demonstrates Univision's clear desire to have Oliveras withdrawal his threat of litigation in order to allegedly discuss his departure from the company. Attorney Towfighi's condition is illegal per se.   Second, the reasonable inference to derive from Attorney Towfighi's letter is that it was a directive to Larry Sands, Jessica Rodríguez and Jeannette Ramos to begin to pad Oliveras' personnel record with so-called performance memos. All of these so-called performance memos were denied by Oliveras in his statement under penalty of perjury. **(See Plaintiff's Exhibit 1 ¶ 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, and 49)**  Indeed, Jessica Rodríguez, "the very individual alleged to have committed the retaliatory acts, played a significant role in assembling, collecting and soliciting that facts that are now offered to support [Oliveras' employment] termination.  [Rodriguez's] substantial involvement could suggest to a reasonable fact finder that those facts must be looked upon with a skeptical eye." *Weintraub v. Mental Health Authority of St. Mary's Inc., D. Md. 2010; Quinn v. Green Tree Credit Corp., 159 3rd 759 (2nd Cir. 1998)* (noting that jury might infer pretext from fact that most evidence generated by individuals responsible for violative action.) Third, Reyes not only admitted that she received the instructions from the Legal Division in mid-April to allegedly start to investigate Oliveras' claims of age and sexual discrimination, **(See:  See:  Defendant's Exhibit F, P. 57, L. 15-24; P. 58, L. 1-18),** but also that she had received Attorney Ayra Towfighi's letter dated April 10, 2008, close to that date.  (**See:  Plaintiff's Exhibit 2, P. 85, L. 3-24 and P. 87, L. 18-19**). Even though, Oliveras' claim was one of age and sex discrimination, Reyes did not interview him even though company policy dictated that she should do so.  (**See Plaintiff's Exhibit 1¶33;   See also:  Plaintiff's Exhibit 2, P.23, L. 3-24; P. 24, L. 2-24; P. 1-4).** Indeed, Reyes admitted that there is no annotation in Oliveras' personnel file to the effect that he refused to cooperate with her investigation, even though, it was very important to document his alleged refusal.

(**See:  Plaintiff's  Exhibit 2,  P. 41, L. 2-20; P. 52, L. 1-5**). Worst, even though, Reyes said that first she tries to get the information about the discriminatory conduct; what are the specific facts, when it happened and what is being alleged; (**See:  Plaintiff's Exhibit 2, P. 25,  7- 10**), the interviews of Luani Pellot, Susan Pagán and Tomás Colón were centered on Olivera's alleged performance problems.  (**See: Plaintiff's Exhibit 2**, P. 33, L. 11-24; P. 34, L. 1; P. 34, L. 2-3).   Reyes alleged investigation is a clear deviation of Defendant's policy, which demonstrates Defendant's retaliatory animus and is evidence of pretext. "[P]retext can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices." *Kouvchinov v. Parametric Tech. Corp.,* 537 F.3d 62, 68 (1st Cir.2008).

Likewise, Defendant attributed to Oliveras wrongdoings, which were committed by another employee or were standard practices of operation of the company. For instance, the alleged incident of April 28, 2008, was a mistake done by Luani Pellot and not soon after receiving Sands' email, Rodríguez answered and told Sands that it was Pellot's mistake.  Nevertheless, Rodríguez did not disciplined Luani Pellot and she tried to attribute this mistake to Oliveras, knowing that he had not committed those mistakes.  (**See:  Plaintiff's Exhibit 1¶ 35**.) With regards to the alleged incident of July 6, 2008, it was false that the promos did not air due to Oliveras' alleged wrongdoing.  This mistake was done by Luani Pellot, and Oliveras explained it to Rodríguez in detail.  Yet again, Rodríguez did not discipline Luani Pellot and instead attributed the mistake to Oliveras, knowing full well that he had not committed the mistake.   Oliveras understood that this was another retaliatory act on the part of Defendant against him.  (**See:  Plaintiff's Exhibit 1¶ 45**)

The same analysis applies with regards to the alleged incident of the scheduling of promo for the show "Premios Juventud", because it apparently aired at a time when it should not have been airing, Oliveras denied committing the alleged mistake, because he did not air the promo for the show,

especially, sin the promo was not in circulation.  (**See:  Plaintiff's Exhibit 1¶ 46**)  With regards to the incident with Radio Station La X airing the wrong spot for the "Great Premiere" for "Tontas", Oliveras told Larry Sands that the mistake was made by the radio station.  Oliveras investigated the incident with Luani Pellot, who was the person in charge of reviewing the promo before it left the station.  This was the standard operating procedure in these types of situations.  Oliveras  was surprised by what Rodríguez told Larry Sands to the effect that as usual, Oliveras had called Luani up and asked her what the procedure was and that all the details he gave Larry Sands were the ones that Luani had given him, because Oliveras did not know anything.  It is clear that Rodríguez was taking another retaliatory action against Oliveras, because she knew that Oliveras was following the company's standard operating procedure.  (**See Plaintiff's Exhibit 1 ¶ 47),**

In sum, the aforementioned facts clearly establish Defendant's mendacity as to the Oliveras' poor performance and that reasons for his termination are pretext to masquerade sex and age discrimination and retaliation.

### 2.  Oliveras established that he performed his job to Univision expectations

In light of the facts already discussed, Defendant's contention that Oliveras was not performing his job to its expectations not only lacks merit, but also is an incorrect application of the second prong of Plaintiff's prima-facie case. Defendant cannot use, for the purpose of the prima facie analysis, its stated reason for firing Oliveras as proof that he was not qualified for the job. "[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination. *See also Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988)

("legitimate expectations" prong met where plaintiff "tendered some evidence which, if believed, proved that he was doing his chores proficiently")." *Velez v. Thermo King of P.R., Inc., 585 F.3d 441, 449 (1st Cir. 2009)*. Consequently, not only the factual record defeats Defendant's contention, but the applicable law simply is not what Defendant tries to portray.

### 3.   Oliveras has produced direct and indirect evidence of Sex and Age Discrimination and Retaliation

#### a)   Oliveras Direct Evidence of Retaliation

It is undisputed that Oliveras' attorney sent Univision a letter notifying that Oliveras was going to file a complaint for sex and age discrimination and that Oliveras also notified Rodríguez that he would file a complaint for age and sex discrimination because he was stripped of his duties in favor of a female, Luani Pellot, who was 34 years. These are protected activities under ADEA and Title VII. ( **See Defendant's Exhibit C-24 and J).** It is **also** undisputed that Oliveras has uncovered sufficient evidence to prove his claim of retaliation under ADEA and Title VII with both *direct* and *circumstantial* evidence.   "A Court can dispense with the *McDonnell Douglas* framework when a plaintiff comes forward with direct evidence of retaliation." *DeCaire v. Mukasey,* 530 F.3d 1, 20 (1st Cir.2008). Direct evidence of retaliation normally consists of "those statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment action." *Id.* at 17 (internal quotations and citation omitted). "Comments which, fairly read, demonstrate that a decision-maker made, or intended to make, employment decisions based on forbidden criteria constitute direct evidence of discrimination." *Febres v. Challenger Caribbean Corp.,* 214 F.3d 57, 61 (1st Cir.2000). In the instant case the direct evidence of retaliation speaks volumes.

Attorney Ayra Towfighi, Unvision's Vice President and Senior Legal Counsel, sent a letter to Oliveras' attorney where he said that "**if Mr. Oliveras wishes to withdraw his baseless threat of**

litigation and simply discuss his departure from the company in a more amicable fashion, I am certainly open to do doing so." (**See:  Exhibit 3, P. 3 ¶2).** In other words, Univision's Senior legal counsel concluded, prior to Reyes making the alleged investigation that Oliveras' claims were baseless and that he should withdraw his threat of ligation and depart from the company in a more amicable way. This is direct evidence of retaliation. Worst, Attorney Towfighi's direct threat to terminate Oliveras' employment because he opposed defendant's unlawful actions under Title VII and ADEA, was reinforced by Jessica Rodríguez' April 17, 2008 (9:39 p.m.) e-mail, in which, Rodríguez stated:  "**As it was explained to your attorney, your attempts to "save" your job by making false accusations of discrimination will not have the desired effect. (See Plaintiff's Exhibit 1 ¶ 32 and Defendant's Exhibits C-24 and C-25**).

It is clear from the letter from Attorney Towfighi and the letter from Rodríguez, who was the person discriminating against Oliveras, that Defendant concluded without any investigation that Oliveras' claims were baseless and that nothing could save him from being discharged. He had committed the capital sin of opposing Defendant unlawful practices. This direct evidence of retaliation dispels any doubt, that Oliveras' fate was already decided in April 20088 and not in August 22, 2008. Indeed, Attorney Towfighi's letter demonstrates Univision's clear desire to have Oliveras withdrawal his threat of litigation in order to allegedly discuss his departure from the company.   Attorney Towfighi's condition is illegal per se and it is direct evidence of retaliation. Indeed, Jessica Rodríguez, the very individual that committed the retaliatory acts, played a significant role in assembling, collecting and soliciting that facts that are now offered to support Oliveras' termination. In sum, there is enough evidence to conclude that the decision to terminate Oliveras' employment,  was based on forbidden criteria that constitutes "direct evidence of discrimination." *Febres v. Challenger Caribbean Corp. .,* 214 F.3d 57, 61 (1st Cir.2000). Furthermore, the evidence is clear that Sands in an agitated manner told

Oliveras that he did not need an attorney for anything. This is also direct evidence of retaliation. Worst, the evidence establishes that Sands, Attorney  Ayra Towfighi, Jessica Rodríguez and Jeannette Reyes engaged in the concerted retaliatory campaign to terminate Oliveras' employment. The sham investigation carried out by Reyes was directed to fabricate evidence against Oliveras.

In sum, in the instant case Oliveras has presented enough direct evidence to conclude that retaliatory animus at least in part motivated, or was a substantial factor in his employment termination. Consequently, "it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus." *Jones v. Robinson Prop. Group, L.P.,* 427 F.3d 987, 992 (5th Cir.2005).  This by itself precludes the entry of summary judgment.

### b)      Oliveras Circumstantial Evidence of Retaliation

To make a *prima facie* case of retaliation under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 801-803 (1973) Oliveras must prove that:

> (1)     he engaged in protected activity under Title VII; (2) that he suffered an adverse employment action; and (3) the adverse employment action was causally connected to the protected activity.
>
> *Collazo v. Bristol-Myers Squibb Manufacturing, Inc.,* 617 F.3d 39, 2010 WL 3037811 (1st Cir. 2010).

The *prima facie* showing creates a presumption of discrimination, shifting the burden to the defendant to articulate a legitimate, non-discriminatory reason for its action. If the defendant fails to satisfy this burden, the plaintiff prevails.  If this defendant articulates a non-discriminatory reason for its action, then the burden shifts back to the plaintiff.  At this stage, the plaintiff must be afforded the

opportunity to prove that the reason offered by the employer was not true, that it was "but a pretext for discrimination". *Reeves v Sanderson Plumbing Products, Inc.*, 530 U.S. 130, 120 S.Ct. 2097, 2106 (2000). In this context, the plaintiff's "*prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 120 S. Ct. at 2109; *see also, St. Mary's Honor Ctr.,* 509 U.S. at 511

In the instant action, contrary to Defendant's contention Oliveras clearly satisfies his *prima facie* case of retaliation under ADEA and Title VII.

### c) Oliveras engaged in protected conduct under ADEA and Title VII

Oliveras' claim of retaliation is anchored under the "opposition" clauses of ADEA and Title VII. As to the "opposition" clause, Oliveras engaged in protected conduct by opposing Rodríguez's conduct. It is undisputed that Oliveras' attorney sent a letter notifying Defendant that Oliveras was going to file a complaint for sex and age discrimination,  and that Oliveras also notified Rodríguez that he would file a complaint for age and sex discrimination because he was stripped of his duties in favor of a female, Luani Pellot, who was 34 years. These are protected activities under ADEA and Title VII. ( **See Defendant's Exhibit C- 24 and J).** Therefore, Oliveras fulfils the first element of his *prima facie* case.

### d) Oliveras suffered an adverse job action

Olivera's discharge is clearly an adverse employment action under Supreme Court and First Circuit precedent.

### e) Causal Connection

While temporal proximity is the most common manner to establish the third element of the retaliation *prima facie* case, *i.e.* a causal connection between the protected conduct and the adverse job

action, other means are also independently sufficient. Indeed, there are many kinds of evidence other

than "intervening hostility" that can tie a retaliatory act to an earlier instance of protected conduct.

Contrary to Defendant's contention <u>the required proof is that of "causation", not "temporal proximity"</u>.

> Temporal proximity is but one method of proving retaliation.  *See Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir. 1994) (per curiam) (stating that "[o]ne way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action.");  *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (stating that "there are many sources of circumstantial evidence that ... can demonstrate retaliation").  Evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection.  *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (stating that "where there is a lack of temporal proximity, circumstantial evidence of a '*pattern of antagonism' following the protected conduct can also give rise to the inference*" that a causal connection exists);  *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (stating that "[t]he causal connection between the protected activity and the adverse employment action can be established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct ...");  2 Arthur Larson & Lex K. Larson, Employment Discrimination § 35.02, at 35-15 (2d ed. 2001).

> When examining such evidence, we keep in mind that the prima facie case is "a small showing that is not onerous and is easily made."  *Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003) (citations and internal quotation marks omitted).  After carefully examining the record, we believe there is ample evidence of disparate and discriminatory treatment from which a jury could find a causal connection between Che's demotion and his earlier lawsuits.

*Che v. Massachusetts Bay Transp. Authority,* 342 F.3d 31, 38 (1st Cir.2003).

Furthermore, "it is important to emphasize that ***it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case,*** and temporal proximity merely provides an

evidentiary basis from which an inference can be drawn. The element of causation, which necessarily

involves an inquiry into the motives of an employer, is highly context- specific. *When there may be*

*valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 178 (3rd Cir.1997). For instance, causation can be found with the "combination of [the managers'] *increased scrutiny* [of the plaintiff] with the temporal proximity of his termination occurring less than three months after his EEOC filing is sufficient to establish the causal nexus needed to establish a prima facie case." *Hamilton v. General Elec. Co*., 556 F.3d 428, 435-436 (6th Cir. 2009). Oliveras clearly satisfies the causal connection requirement of Title VII's retaliation *prima facie* case. First, there is direct evidence of retaliation as was already explained. Second, Sands, Rodríguez and Reyes started an increased scrutiny of the Plaintiff once he engaged in the protected activity. Indeed, the evidence establishes that the investigation conducted by Reyes was a sham to retaliate against Oliveras. In this context, changes in the way the employer treated the employee after the protected conduct can establish a causal connection, as can disparate treatment of the employee after the protected conduct. *See Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 51 (1st Cir.1999); *Che,* 342 F.3d at 38. In the instant case, it is incontroverted that during the April 4, 2008 meeting, Sands got really mad when Olivers told him that he had legal representation and upon hearing that Sands, in an agitated manner and banging on the desk, told Oliveras that he did not need a lawyer for anything.  Even worse, from this date on, Sands only talked to Oliveras at the staff meetings and stopped being friendly with Oliveras as he used to be.

In sum, this line of events establishes not only the causal connection, but also denotes Defendant's retaliatory animus that precludes the entry of summary judgment. Finally, Rodriguez substantial involvement in Oliveras' in the events leading up to Oliveras' employment termination establishes causation per se and could suggest to a reasonable fact finder that those facts must be looked upon with a skeptical eye." *Weintraub v. Mental Health Authority of St. Mary's Inc., D. Md. 2010;*

*Quinn v. Green Tree Credit Corp., 159 3rd 759 (2nd Cir. 1998)* (noting that jury might infer pretext from fact that most evidence generated by individuals responsible for violative action.)

       **f)**       **Pretext**

     It is Oliveras' position that his evidence of the *prima facie* case plus Univision's mendacity regarding its proffered non discriminatory reason for his employment termination makes it clear that judgment as a matter of law is inappropriate in the instant case. At this juncture, Oliveras incorporates by reference his analysis of Univision alleged non-discriminatory reason for his employment termination. Oliveras' alleged poor performance since 2005 is a post hoc justification that is pretextual per se. *Velez v. Thermo King of P.R., Inc., 585 F.3d 441, 449-450 (1st Cir. 2009).* Hence, the jury "could infer from the late appearance of [the employer's] current **justification** that it is a **post-hoc** rationale," "invented for the purposes of litigation," and "not a legitimate explanation for [its] decision." *Merritt v. Old Dominion Freight Line, Inc. --- F.3d ----, 2010 WL 1427505 (4th Cir 2010).* The inconsistencies, *Santiago-Ramos v. Centennial, supra*; departures from established policies, *see*, *Rivera-Rodríguez v. Sears Roebuck of Puerto Rico, Inc.*, 432 F.3d. 379, 381-382 (1st Cir. 2005) and outright  falsehoods, *Reeves, supra*, are sufficient for a jury to find that Univision's proffered non-discriminatory reason was pretextual and an subterfuge to mask retaliation. Furthermore, Rodriguez substantial involvement in the events leading up to Oliveras' employment termination could suggest to a reasonable fact finder that those facts must be looked upon with a skeptical eye." *Weintraub v. Mental Health Authority of St. Mary's Inc., D. Md. 2010; Quinn v. Green Tree Credit Corp., 159 3rd 759 (2nd Cir. 1998)* (noting that jury might infer pretext from fact that most evidence generated by individuals responsible for violative action).  Reyes alleged investigation is a clear deviation of Defendant's policy, which demonstrates Defendant's retaliatory animus and evidence of pretext. "[P]retext can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices."

*Kouvchinov v. Parametric Tech. Corp.,* 537 F.3d 62, 68 (1st Cir.2008). Thus, the failure to interview a supervisor or witnesses can be pretext to masquerade retaliation. Cf. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 414–415 (6th Cir. 2008); *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1159 (10th Cir. 2008); *Tisdale v. Federal Exp. Corp.*, 415 F.3d 516, 529–530 (6th Cir. 2005) (Title VII case). Likewise, the fact that the misconduct attributed to Oliveras is not believable is pretextual. *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). An employer's potentially inconsistent reasons for terminating an employee, like the instant case, may support an inference of pretext and prevent summary judgment for the employer. *Domínguez-Cruz v. Suttle Caribe, Inc.* 202 F3d 424, (1st Cir 2000). ("A jury's conclusion that an employer's reasons were pretextual can be supported by inconsistencies in or the unconvincing nature of the decision-maker's testimony."). Also, the employer must do more than simply state that it held an "honest belief"; it must introduce evidence of reasonable reliance on the particularized facts, and the employee may produce proof to the contrary, and that is case before this Court. *Boyd v. Province Healthcare Co., Inc.*, 2005 WL 3132394, at 7 (S.D. Ala. Nov. 22, 2005). Accordingly, Univision is not entitled to summary judgment in its favor.

### 4.      Retaliation Under Law No. 115

Oliveras incorporates by reference its arguments under Title VII to his claim under Puerto Rico Law No. 115.  But contrary to Defendant's position, Law 115 does not mirror the retaliation provisions of ADEA and Title VII, because Oliveras meets his prima facie case under Law No. 115.  As such, there is a shift in burden of persuasion, not only production, which makes it more difficult for Univision to prevail than under Title VII.  *See, Rivera Figueroa v. AAA*, 2009 TSPR 162. Plaintiff also incorporates by reference this analysis for Plaintiff's claim of retaliation under Law 69.  The issue of rebutting the presumption under Law 115, is for the jury to decide.

### 5.      Same Actor Inference

Defendant contends that this inference should be applied in the instant case. We respectfully disagree. First, it is improper to make an inference for the moving party at the summary judgment stage. Rule 56 is clear: all inferences are for the non-moving party. The same actor inference is an improper creature of judicial activism that has not been adopted by the Supreme Court. "[I]n considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). ***We therefore reject the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual.*** Such an approach strikes us as being contrary to the Supreme Court's opinion in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202." See *Wexler v. White's Furniture*, 317 F.3d 564, 572–74 (6th Cir. 2003). Furthermore, it is also inapplicable in the instant case because Oliveras clearly accused Rodríguez of discrimination and she actively engaged in a retaliatory campaign against Oliveras. Likewise, "the inference alone is generally not a sufficient basis to grant summary judgment for the employer, at least when the employee has proffered evidence of pretext." *Masters v. F.W. Webb Co*., 2008 WL 4181724, *6 (W.D.N.Y. Sept. 8, 2008)  Finally, the 'same actor' inference is ***not a necessary inference, it is only a plausible one,*** and decisions addressing it "have warned that its use is not to become a substitute for a fact-intensive inquiry into the particular circumstances of the case at hand." *Copeland v. Rosen*, 38 F.Supp.2d 298, 305 (S.D.N.Y.1999)

### 6.   Plaintiff's Title VII and ADEA retaliation claims are not time-barred

Univision submits that Oliveras' retaliation claims under ADEA and Title VII are time-barred because allegedly they were filed before the ADU. This is incorrect. Defendant's **Exhibit J** establishes that Oliveras not only filed his retaliation charge before the ADU, but also that he requested that his retaliation charge be notified to the EEOC when he checked the space designated for the EEOC. Indeed,

the first page of **Exhibit J** also establishes that the retaliation was filed before the EEOC. Indeed, the EEOC notified Oliveras a Notice of Right to Sue that confirmed not only that the retaliation charge was filed before the EEOC, but also that the EEOC was terminating the processing of Oliveras' retaliation charge. **(See Plaintiff's Exhibit 4)**. This suffices to derail Defendants' contention as to this matter.[2] At this point we want from this Honorable Court to take judicial notice of the opinion and order issued by Judge Jaime Pieras in the case of Lilliam *Hernández v. Mechanical Manpower Corp*. Civil No. 08-16229 **(See Plaintiff's Exhibit 4),** in which the Court neatly explains why the interplay between the ADU and the EEOC regarding the retaliation claims under Title VII. In that case we faced the same argument and the Court concluded:

> "Defendants argue that Plaintiff Cruz's Title VII retaliation claim should be dismissed for failure to exhaust administrative remedies. In support of this argument, Defendants assert that Cruz filed his administrative charge only with PR-ADU, but neglected to file with the federal Equal Employment Opportunity Commission ("EEOC").
>
> Defendants state that for purposes of a Title VII retaliation claim, PR-ADU is not a designated Fair Employment Practice Agency ("FEPA"). 29 C.F.R. § 1601.74. Therefore, filing a Title VII retaliation claim with PR-ADU does not automatically suffice to satisfy the requirement of making an administrative charge within the requisite limitations period, and before filing a complaint in district court. Although Defendants are correct that PR-ADU is not a designated FEPA, they have failed to demonstrate the absence of a charge before the EEOC for Cruz's retaliation claim. PR-ADU is a Notice Agency for purposes of the applicable regulation, 29 C.F.R. § 1601.74, which means that when a charge is filed with either the EEOC or PR-ADU containing claims that fall within the scope of the other agency's duties, the agency receiving the charge will provide notice to the other agency that said charge has been filed. For example, if PR-ADU receives a charge alleging both federal and state causes of action, PR-ADU will notify the EEOC of the charge. In the instant case, Plaintiffs' complaint alleges that Cruz filed a charge of retaliation before PR-ADU and the EEOC. In Plaintiffs' opposition to Defendants' motion to dismiss, Plaintiffs attach the Notice of Right to Sue issued by the EEOC to Cruz on March 10, 2008.[1] The Notice states Cruz may file a suit in federal court because the EEOC is terminating its processing of the charge, and "[m]ore than 180 days have passed since the filing of this charge." The Notice refers to EEOC charge number 16H-2007-00963. It is clear that an EEOC charge was made on behalf of Plaintiff Cruz. Following this charge, and the issuance of a Notice of Right to Sue from the EEOC, Cruz had adequately exhausted administrative remedies, and was entitled to bring his Title VII retaliation claim in federal court."

---

[2] It is obvious that pursuant to the UAD's work-sharing agreement with the Equal Employment Opportunity Commission ("EEOC"), the UAD transmitted the retaliation charge to the EEOC.

The same analysis can be applied in the instant case. In paragraph 4 of its answer to the second amended complaint Defendant admitted that "Regarding paragraph 4, subsections (a) and (b) of the Second Amended Complaint, Univision only admits, upon information and belief, that plaintiff Gerardo Oliveras Zapata (hereinafter referred to as "Oliveras" or "plaintiff") filed a charge of discrimination before the Anti-Discrimination Unit of the Puerto Rico Department of Labor and the Equal Employment Opportunity Commission ("EEOC") on September 24, 2008, and that the EEOC issued a Notice of Right to Sue in charge number 16H-2008-00895 on July 1, 2009." **(See Docket 14).** This is a judicial admission that the EEOC issued a Right to Sue Letter regarding Oliveras charge filed before the ADU which included the charges of retaliation under the ADEA and Title VII.[3]  This by itself suffices to conclude that Plaintiff's retaliation claims are not time barred. Defendant is misleading the Court on one point that we considered should be addressed. Contrary to Defendant's position, the ADU is Fair Employment Practice Agency ("FEPA") under  29 C.F.R. § 1601.74., for purposes of retaliation claims under ADEA. Indeed, the regulation does not exclude retaliation claims under ADEA and Defendant did not cite any case or regulation in support of such claim.

## 8.    Univision discriminated against Oliveras due to his age and sex.

In its motion for summary judgment Univision did not contest that Oliveras belongs to the protected group under Title VII and ADEA. Its line of attack is directed to establish that Oliveras cannot discredit Defendant's nondiscriminatory reasons and that he cannot prove that Univision reasons are pretex for discrimination. For the sake of brevity, we incorporate by reference our arguments already

---

[3] A "judicial admission is binding upon the party making it; it may not be controverted at trial or on appeal. Judicial admissions are not evidence at all but rather have the effect of withdrawing a fact from contention. Included within this category are admissions in the pleadings in the case, admissions in open court, stipulations of fact, and admissions pursuant to requests to admit." *Michael H. Graham, Handbook of Federal Evidence* § 801.26 (2002). See also, *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.,* 125 F.3rd 481, 483 (7th Cir.1997). "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3rd 1194, 1198 n. 8 (7th Cir. 1995);  *Schott Motorcycle Supply, Inc. v. American Honda Motor Co*., 976 F.2d 58, 61-62 (1st Cir.1992); *Help At Home Inc. v. Medical Capital, L.L.C*., 260 F.3d 748, 753 (7th Cir. 2001).

mentioned that clearly demonstrates that Oliveras was performing according to Univision expectations. Furthermore, and as we mentioned before, Defendant cannot use for the purpose of the prima facie analysis its stated reason for firing Oliveras as proof that he was not qualified for the job. "[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination. *See also Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988) ("legitimate expectations" prong met where plaintiff "tendered some evidence which, if believed, proved that he was doing his chores proficiently")." *Velez v. Thermo King of P.R., Inc., 585 F.3d 441, 449 (1st Cir. 2009).* Consequently, not only the factual record defeats Defendant's contention, but the applicable law simply does not say what Defendant tries to portray. Finally, we incorporate by reference our analysis that the record indicates that the reasons advanced by Defendant for Oliveras' dismissal are pretextual. This suffices to defeat Defendant's request for judgment as a matter of law regarding Oliveras' caims of age and sex discrimination and retaliation.

**WHEREFORE,** Plaintiff very respectfully request from this Honorable Court to dismiss Defendant's motion for summary judgment.

**RESPECTFULLY SUBMITTED**.

**IT IS HEREBY CERTIFIED** that this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the such filing to the following: Radames Torruella, Esq. and Luis F. Llach Zuñiga, Esq.

In San Juan, PR on this 11th day of January 2011.

**CARLOS M. VERGNE LAW OFFICES**

24 Mariana Bracetti 2nd Floor

San Juan, P.R. 00925

Tel: (787) 753-3799

Fax: (787) 763-9313


**s/CARLOS M. VERGNE**

Carlos M. Vergne Vargas

USDC - PR No. 209611

E-mail: carlosvergne@aol.com


**s/JOSE A. RIOS ROSA**

Jose A. Ríos Rosa

USDC - PR No. 216906

E-mail: joserios@prtc.net